THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FREMONT, APPELLANT, v. WILSON, APPELLEE.

1. COSTS.

The right to reimbursement for costs expended is statutory. In the absence of statute it does not exist.

2. COSTS IN CRIMINAL CASES.

Costs of the prosecution are recoverable of a defendant upon conviction of a crime.

3. SAME.

The county is liable for the costs of prosecution in a criminal case where the defendant is acquitted.

4. SAME.

In case of the conviction of a defendant and of his inability to pay the costs, the county is liable for the costs of prosecution.

5. SAME.

There is no liability against the county on account of services rendered by officers or witnesses on behalf of a defendant in a criminal case, unless he has availed himself of the provisions of the statute by obtaining an order of the court or judge that such witnesses be subpœnaed.

*Appeal from the District Court of Fremont County.*

Messrs. WALDO & DAWSON, for appellant.

Mr. S. P. DALE, for appellee.

THOMSON, J., delivered the opinion of the court.

At a regular session of the Board of County Commissioners of the county of Fremont, John Wilson, who was clerk of the district court in and for that county, presented certain bills to the board, for fees due him as clerk for official services in behalf of defendants in certain criminal cases tried in his court. A portion of these bills, aggregating $118.75, were disallowed by the board of commissioners, and Wilson appealed to the district court. The case was heard in the district court upon the following agreed statement of facts:—

" It is hereby stipulated and agreed by and between the above named parties to this appeal that the following are the facts upon which this cause shall be submitted for the decision of said court, to wit:

" That at the regular session of the Board of County Commissioners of said county of Fremont, in said state of Colorado, held in January, A. D. 1892, certain bills were presented to said board by the appellant above named, who is, and then was, the clerk of the district court of the Eleventh Judicial District of the state of Colorado, in and for said county of Fremont.

" That said bills were presented in all respects in accordance with all of the provisions of law in regard to the presentment of such bills.

" That part of the items included in said bills were allowed and paid by said Board of Commissioners, and that other items included in said bills, amounting, in the aggregate, to the sum of one hundred and eighteen dollars and seventy-five cents, ($118.75), were disallowed by said Board of Commissioners.

" That the items so disallowed were as follows, to wit:

" In case No. 1216, *The People v. R. C. McCoy*, Ind. for murder. Defendant's clerk's costs at and prior to Oct. term, 1889, the time of the first trial, and for which no bill of same has heretofore been presented:

| | |
|---|---:|
| April, 1889, entering appearance of 4 attorneys, at 20 c. | $ .80 |
| Oct., 1889, issuing 31 subpœnas for Oct., 1889, 60 c. | 18.60 |
| Filing 47 papers, at 12½ c. | 5.87 |
| Affidavit for *habeas corpus* and filing same | .25 |
| Issuing *habeas corpus* and filing same | 1.12 |
| Swearing 35 witnesses at 12½ c. | 4.37 |
| 62 witnesses' affidavits and filing the same, at 25 c. | 15.50 |
| 62 witnesses' certificates, at 75 c. | 46.50 |
| | $93.01 |

"In same case at October term, 1891, defendant's costs:

| | | |
|---|---|---:|
| Filing two papers (not subpœnas) | . . | $ .25 |
| 6 affidavits and filings for defendant | . . | 1.50 |
| Oath to Elizor and filing same | . . . | .25 |
| 3 witnesses' affidavits, at 15 c. | . . . | .45 |
| 3 witnesses' certificates, at 15 c. | . . . | .45 |
| Other items which cannot now be certainly separated from the bill | . . . . . | 1.97 |
| | | $4.87 |

"*People v. Kasper Schaeferhoff*, No. 1340, indictment for assault with intent to kill and murder. Fees at October term, 1891:

| | | |
|---|---|---:|
| Entering appearance of attorney . | . . | $ .20 |
| Swearing 4 witnesses, at 12½ c. | . . . | .50 |
| Issuing 3 subpœnas, at 60 c. | . . . | 1.80 |
| 8 witnesses' affidavits and filing, at 15 c. | . | 1.20 |
| 8 witnesses' certificates, at 15 c. | . . . | 1.20 |
| Filing 4 papers for def't, at 12½ c. | . . | .50 |
| | | $5.40 |

"*People v. Frank Salvo*, No. 1341, murder. Defendant's costs not in court order, Oct., 1891:

| | | |
|---|---|---:|
| Entering appearance of attorneys | . . | $ .20 |
| Affidavits, certificates and swearing 2 witnesses not ordered by court, 15 c., 15 c. and 12½ c. each | . . . . . . . . | .84 |
| Some other items not now distinguishable | . | .16 |
| | | $1.20 |

"*People v. Ben Boyer*, No. 1318, murder. Defendant's costs, October term, 1891:

| | | |
|---|---|---:|
| Entering appearance of attorneys, at 20 c. | . . | $ .40 |
| Filing 15 papers for def't, at 12½ c | . . . | 1.87 |
| Issuing 12 subpœnas, at 60 c. | . . . | 7.20 |
| Certificates for 16 witnesses, for def't, 15 c. | . | 2.40 |
| Amount carried forward | . . . . | $11.87 |

Amount brought forward . . . . $11.87

Affidavits and filings for 16 witnesses for def't,
15 c. . . . . . . . 2.40

$14.27

" Summary of disallowed costs:

*People v. Richard C. McCoy* . . . $97.88

*People v. Kasper Schaeferhoff* . . . 5.40

*People v. Frank Salvo* . . . . . 1.20

*People v. Ben Boyer* . . . . 14.27

Total . . . $118.75

" That the services were rendered by said clerk for said defendants as above charged for, at the request of said defendants, and that the several amounts charged are entirely unobjectionable.

" That said defendants, Richard C. McCoy, Kasper Shaeferhoff and Frank Salvo, and each of them, were, at said October term, A. D. 1891, convicted, and that in each and all of said cases it was made to appear in a lawful manner that said defendants and each of them were unable to pay costs, or any part of said costs; and that, at the same term of said court, said defendant, Ben Boyer, was acquitted.

" That, in said cases of McCoy and Salvo, application was regularly made to the court, under the provisions of section 1001 of the General Statutes of the state of Colorado (sec. 1507 Mills' Annotated Statutes), and under the provisions of section 5 of an act of the general assembly of the state of Colorado, entitled ' An act to amend sections 65, 123, 133, 197 and 313 of chapter XXV. (the same being general sections 753, 811, 827 and 1001) of the General Statutes of the state of Colorado, entitled " Criminal Code," ' approved April 9, 1891, and in force on that day (Laws 1891, p. 126), for orders that certain witnesses be subpœnaed, if found within the limits specified in said statutes; but that all fees of said clerk incurred by the process for such witnesses and all fees incurred in connection with such witnesses so sub-

pœnaed in accordance with such orders have been paid and are not included in the fees disallowed as' aforesaid; and that said fees disallowed as aforesaid (including the amounts above stated to be not separable from other items in the bills), amounting to the sum of $99.08, are costs for the payment of which no order has ever been made by said court or by the judge thereof.

" That in the cases of said Shaeferhoff and Boyer no application was ever made to said court or to the judge thereof for any order directing that any witness or witnesses be subpœnaed, and that no such order was ever made, and that the $5.40 in the Schaeferhoff case, and the $14.27 in the Boyer case, are costs of said defendants for whose payment no order of said court was made. '

" That the only objection to the payment of said costs so disallowed, as aforesaid, and every part thereof, is that in the absence of such previous orders of court, made under the statutes above cited, no law of the state of Colorado requires them to be paid by said Fremont county or by its Board of County Commissioners; wherefore, on said facts, the opinion of this court as to whether or not said laws require the payment of said costs by said county, is prayed."

Upon the hearing the court reversed the action of the commissioners and gave judgment to the plaintiff for the amount of his claim. The board brings the case here by appeal.

The plaintiff bases his right to judgment on section 699, Mills' Ann. Stat. (Session Laws 1889, p. 100). That section, in so far as it affects this controversy, reads as follows: " The costs in criminal cases shall be paid by the county in which the offense was committed, when the defendant shall be convicted and shall be unable to pay them; when the defendant is acquitted the costs shall be paid by the county in which the offense was committed, unless the prosecuting witness be adjudged to pay them." If the term " costs," as used in that section, be construed to mean the entire costs incurred, both for the prosecution and the defense in a case, the plaintiff's contention must prevail, and judgment was

properly and rightfully rendered in his favor by the district court; but if, on the other hand, the term, as used, refers only to the costs incurred by the people in the prosecution, then the judgment is erroneous and must be reversed.

The language itself is indefinite; the word " costs " is not qualified or limited by any other language in the section, so as to clearly indicate the legislative intent; and if the section stood alone, if there were no other legislation affecting its subject-matter, there might be some difficulty in arriving at a satisfactory conclusion as to its meaning. At common law there was no recovery of costs either in civil or criminal cases. In civil suits, each party to the controversy paid his own expenses. In criminal causes, the costs made by the defendant, whether he was convicted or acquitted, if paid at all, were paid by him; the costs of the prosecution, no matter what the event of the trial, were unpaid. On the part of the state or sovereign there was neither payment nor recovery of costs. The right to reimbursement for costs expended is therefore purely statutory. Without a statute giving it, it does not exist. *Board of Com'rs Larimer Co. v. Lee, ante,* 177.

Such statute was embraced in the Criminal Code of 1861, whereby it was provided that in cases of persons convicted of crimes or misdemeanors therein specified, or at common law, the judgment should be that the offenders convicted should pay the costs of prosecution, and that a lien should be created upon the property real and personal, then owned or subsequently acquired by the offenders, to the amount of the costs, and of the fines if any, which costs and fines were to be collected by execution. Mills' Ann. Stat., sections 1471, 1472 (Gen. Stat. 1883, sections 964, 965). This statute has ever since been and now is in force; and in authorizing a recovery by the people against a convicted defendant of the costs incurred to secure his conviction, it was a departure from the doctrine of the common law. Still this statute did not assure the payment of such costs. Whether they were collected or not, depended upon the solvency of the defend-

ant. If he failed to pay them, and had no property out of which they could be made, they remained of course unpaid. If the defendant was acquitted, there was no legal obligation anywhere to pay them, and they were never paid. Until the enactment in 1876 of section 699, which we have quoted, there was no provision whereby, in case of a convicted defendant, who was insolvent, or of a defendant who was acquitted, the witnesses for the people, or the officers of the court, were entitled to receive any pay for their services in behalf of the prosecution. There is not, and never has been, any statutory enactment providing for the recovery of costs by a defendant in a criminal case. The only costs for which judgment may be had are the costs of the prosecution, and then only when there is a conviction. As in case of acquittal no costs were paid, and in case of conviction the realization of the costs was necessarily involved in great uncertainty, being dependent upon the solvency of the defendant, it occurs to us, without looking farther, that section 699 was enacted to supply a want which the legislature conceived to exist in the law as it then stood, by making provision for the payment of the costs of prosecution, notwithstanding the defendant might be acquitted or insolvent. It will be observed that it is only in case of the conviction of the defendant and his inability to pay the costs, or of his acquittal, that they are made a charge against the county; so that there is no difficulty in supposing that the costs referred to are the costs incurred by the prosecution, and which, by the terms of section 1471, would in case of conviction be recovered by the people; and not the costs made by the defendant. The mere fact that the term "costs" is used generally, without particularization, proves nothing in either direction. The section will naturally and easily bear such interpretation as we have indicated. A construction of a legislative enactment similar to the one we have been considering, was given by the supreme court of Pennsylvania in *Williams v. Northumberland County*, 110 Pa. St. 48. The act provided "that the costs of prosecution accruing on all bills of indictment, charging

a party with felony, ignored by the grand jury, shall be paid by the county; and in all cases of conviction of any felony, all costs shall be paid forthwith by the county, unless the party convicted shall pay the same; and in all cases in which the county pays the costs, it shall have power to levy and collect the same from the party convicted, as costs in similar cases are now collectible." The court held that that statute created no liability against the county on account of defendant's costs.

The legislature of Wisconsin enacted a law as follows: "When any prosecution instituted in the name of this state, for breaking any law of this state, shall fail, or when the defendant shall prove insolvent, or escape, or be unable to pay the fees when convicted, the fees shall be paid out of the county treasury, unless otherwise ordered by the court; provided that no fees shall be paid out of the county treasury for mileage to the district attorney."

Under the provisions of that act it was sought to compel payment by the county of the fees of defendant's witnesses in a criminal prosecution in which he was acquitted. In deciding the question, the supreme court say: "In the Revised Territorial Statutes of 1839, we find not only the section under consideration, but also a provision that in all criminal prosecutions where judgment should be rendered against the defendant, he should be liable for costs; also that the district attorney should have certain fees for mileage; that fines recovered and collected should be paid into the county or territorial treasury; but no provisions respecting the payment of costs collected into the public treasury. The section in the territorial statute was in harmony with the other provisions; and the system there established was, that in criminal prosecutions, if the defendant was convicted, judgment was rendered against him for the costs of the prosecution; and these costs, if collected, were paid by the officer receiving them to the various officers or persons whose fees or charges made up the items for which the judgment was rendered; or if the county, previous to collection, had paid any of these

fees, then such fees were to be paid into the county treasury. But if defendant was unable to pay, or proved insolvent, or escaped, or the prosecution failed, then the fees were to be paid from the county treasury. What fees? Obviously the same that would have been taxed against defendant if he had been convicted—the fees of the prosecution. And this, we think, is the construction this section of the Revised Statutes of 1858 must receive." *Hutt v. Winnebago County*, 19 Wis. 128.

But there has been other legislation in this state upon the same subject, which affords further aid in ascertaining the purpose of section 699, and therefore its meaning. Section 1507, p. 1000, Mills' Ann. Stat. (Gen. Stat. 1883, § 1001), reads as follows :—" Whenever any person indicted in a court of the state of Colorado shall make affidavit setting forth that there are witnesses whose evidence is material to his defense ; that he cannot proceed to trial without them ; what he expects to prove by each of them ; that they are within the judicial district in which the court is held, or within one hundred miles of the place of trial ; and that he is not possessed of sufficient means and is actually unable to pay the fees of such witnesses—the court in term, or the judge thereof in vacation, if it appears to said court or the judge thereof that the evidence of such witnesses would be material in the trial of the cause, may order that such witnesses be subpœnaed, if found within the limits aforesaid. In such case, the costs incurred by the process and the fees of the witnesses shall be paid in the same manner that similar costs and fees are paid in case of witnesses subpœnaed in behalf of the people."

This latter section was enacted on the 7th of February, 1876. The date of the passage of section 699 was February 11, 1876, just four days afterwards. If we construe section 699 as including the costs of defendant, section 1507 is a useless piece of legislation. It permits nothing to be done in behalf of the defendant which cannot be done equally well under the provisions of section 699. In case of conviction

and his inability to pay, his costs are absolutely payable by the county, and, in case of acquittal, by the county or prosecuting witnesses. By the terms of section 1507 the costs incurred by him are paid in the same manner; and section 16 of the bill of rights guarantees process to compel the attendance of witnesses in his behalf. Section 699 was enacted subsequently to the other section; there is no such inconsistency between the two as to justify the court in saying that the former repealed the latter by implication; the latter is not expressly repealed, and therefore it remains a law, but a law which serves no purpose. If the legislature intended that it should be superseded and rendered nugatory, it surely would have expressed such intention either by words of repeal, or by language which would clearly indicate that purpose. On the 9th day of April, 1891, the section in question was amended (Session Laws 1891, p. 186). The only change made by the amendment was a slight alteration in the phraseology of the affidavit required, the law being otherwise unaffected; and the fact that it was amended is conclusive that the legislature did not regard it as useless law, or as superseded by section 699; but that on the contrary it was considered as a law in force and effective for the purpose for which it was enacted.

The provisions of section 1507 are wise and beneficent. They extend ample protection to an indigent defendant. They afford him every facility for making a legitimate defense, and at the same time provide safeguards against the imposition of unnecessary burdens upon the public; while section 699, if the construction contended for should be adopted, would sweep away every restriction, and enable an offender, in a useless and unavailing defense, to pile up costs *ad libitum* for the county to pay, and thus impose upon its people an unnecessary and oppressive burden.

Such was not in our view the intention of the legislature. We are clearly of the opinion that there is no statute in this state creating any liability against a county on account of services rendered by officers or witnesses in behalf of a de-

fendant in a criminal case, unless the defendant has availed himself of the provisions of section 1507; and that section 699 provides for the costs of the prosecution only.

The judgment will be reversed.

*Reversed.*