[No. 1369.]
### THE JEFFERSON COUNTY BANK v. HUMMEL.

11   337
†11  344

11   337
16   171

1. FRAUDULENT CONVEYANCES—PREFERENCE OF CREDITORS.
Until some lien or right has accrued to a creditor, the debtor retains dominion and control of his property, has absolute power of disposition, and may transfer, convey, or incumber it at his pleasure to pay or protect any creditor, and unless there be some fraudulent intent on his part to defraud his creditors in which the grantee participated, the conveyance is valid as against those who thereafter proceed.

2. SAME—STATUTORY CONSTRUCTION.
Section 1520, General Statutes, which provides that all conveyances made in trust for the use of the grantor shall be void as against existing creditors, held to include only cases where the trust for the benefit of the grantor was the principal purpose to be accomplished by the conveyance, and to exclude cases where the benefit was merely incidental and the main purpose was lawful. A reservation in a conveyance to dispose of the surplus by payment of other debts is not such benefit to the grantor as would invalidate the conveyance.

3. MORTGAGE IN FORM A DEED—PAROL EVIDENCE.

A bill may be filed to declare a deed a mortgage and to foreclose it, and the purpose of the conveyance may be shown by parol evidence.

4. EXCESSIVE CONSIDERATION.

Where the expressed consideration is largely in excess of the debt and the conveyance is claimed to be a mortgage, courts will view the transaction with suspicion, and the evidence of good faith and absence of fraudulent intent against contesting creditors must be full and satisfactory, but such conveyances are not constructively fraudulent.

5. MORTGAGES—TAXES.

In foreclosing a mortgage in the form of a deed, it was proper to permit the mortgagee to prove the payment of taxes and to make them part of the mortgage debt.

6. REJECTION OF EVIDENCE—HARMLESS ERROR.

In a contest between a mortgagee and other creditors, the rejection of evidence to prove that the mortgagor was insolvent was harmless error, where the financial condition of the mortgagor was clearly shown by other evidence.

7. EVIDENCE—STATEMENT OF GRANTOR.

It was proper to reject proof of statements made by the grantor after the conveyance respecting his purpose in making the conveyance, unless it was shown that the grantee had knowledge of the fraudulent intent.

*Appeal from the District Court of Arapahoe County.*

Mr. WILLIAM A. DIER, for appellant.

Mr. JOHN S. MACBETH, for appellee.

BISSELL, J., delivered the opinion of the court.

Under the findings of the court two or three principles which have been established by decisions of the supreme court and followed by this, in so far as they have been directly involved, will determine this appeal.

Prior to the 28th of June, 1893, John C. Hodges was indebted to the appellee, Hummel, in the sum of $1,000, on which there was some accumulations of interest. The debt had been due for some time, and the creditor was calling for his money or for some security which would insure its ulti-

mate payment.  The debtor and creditor came together, and
yielding to the creditor's solicitations Hodges agreed to se-
cure him.  Having with him no abstract of the property which
he proposed to pledge he stated to Hummel that as soon as
he ascertained the description, he would give him security on
lands which he had in Jefferson county.  There was noth-
ing said between the parties as to the form which it should
take, whether trust deed, mortgage, or conveyance.  On the
day of the agreement, Hodges executed three separate con-
veyances on three distinct pieces of property, part of them
being what are termed clay lands, and the balance lots situate
in Golden.  The consideration expressed was largely in ex-
cess of the amount of the debt, being $11,000.  When the
deeds were executed Hodges placed them on record, and then
delivered them to Hummel.  On consultation with an attor-
ney Hodges deemed it wise to write a letter to Hummel,
stating the purpose of the conveyances and directing the dis-
position of any surplus.  The letter was dated the 28th of
June.  It declared the property pledged first to protect Hum-
mel, then J. D. Bridges for $5,500, the balance to be applied
to the payment of any notes which Hodges owed to any bank
as maker.  Hummel declined to accept the possible trust
which might be imposed by its terms.  By a subsequent let-
ter Hodges attempted to remove this objection, and Hummel
held the deeds.  The Jefferson County Bank noting the con-
veyances commenced investigating the transfer.  The presi-
dent, Mr. Whitehead, called on Hummel with reference to it.
Hummel told Mr. Whitehead the entire circumstances, showed
him the letter, and stated the agreement.  Hummel concealed
nothing and his whole course was that of one who had been
engaged in what he supposed was an entirely legitimate trans-
action.  The bank assumed that the conveyance was invalid
and fraudulent as against creditors, commenced suit against
Hodges and levied a writ of attachment on the land.  There-
upon Hummel brought this suit against Hodges and the bank
to foreclose the security, treated the deeds as mortgages and
prayed a decree that the property be sold and the proceeds

applied to the satisfaction of his debt. He made the bank a party, set up the levy of the attachment, and prayed that his lien be decreed prior in time and superior in right to that acquired by the levy of the writ. ' Hodges was very largely indebted to divers persons at the time of these conveyances. He paid part of his liabilities, but a very considerable sum remained due to the bank at the time of the decree. The case was established by the plaintiff's testimony and by that of Mr. Hodges and of Mr. Lanius, who is the appellee in another suit which was tried at the same time and practically by consolidation, though as the conveyance to Lanius covered different pieces of property, there were necessarily two independent judgments and two separate appeals. Since the cases were tried together and on the same evidence, the appeals will stand or fall together. The other case.is only referred to because it was tried on the same testimony. Hodges, Hummel and Lanius gave direct testimony as to the intent and purpose of the transfers. There was none to the contrary and it was thereby established that they were made in good faith, for the simple purpose of security, and without any intention to defraud any other person, whether creditor or otherwise of Mr. Hodges. The court found as a matter of fact that the deeds were made to secure the debt due Hummel and by way of mortgage; that they were made in good faith and that there was no reservation of a trust for the benefit of the grantor either secretly or openly. A decree was entered declaring the deeds mortgages and directing their foreclosure. From this the appeal is taken.

The transaction is attacked as a violation of section 1520, general statutes, which provides generally that all conveyances made in trust for the use of the grantor shall be void as against existing creditors. This statute has been frequently considered. One of the leading and early cases, is *Campbell'v. The Colo. C. & I.Co.*, 9 Colo. 60.

It may be deemed settled by this case as well as by those which will be hereafter cited that until some lien or right has accrued to a creditor, the debtor retains dominion and

control of his property, has the absolute power of disposition, and may transfer, convey, or incumber it at his pleasure to pay or protect any creditor. His power of disposition is complete and ample, and unless there be some fraudulent intent on his part to defraud his creditors in which the grantee participated, the conveyance is valid as against those who thereafter proceed. It is equally clear that this statute is aimed at conveyances whereby there is either by the instrument or by secret argument some trust reserved for the benefit of the grantor. Such statutes are held to include only cases where the "trust for the benefit of the grantor was the principal purpose to be accomplished by the conveyance," and to exclude those where the "benefit was merely an incident and the main purpose was lawful." Otherwise its application is denied. No trust was reserved by the conveyance to Hummel for the benefit of the grantor. It was made directly to the creditor to secure his debt and there were no words of reservation in the instrument nor was there any agreement or understanding between the parties that any part or portion of the proceeds should be devoted to the use of the grantor, nor was he to derive any benefit from the enforcement of the security. In one sense he would obtain an advantage in the disposition of the proceeds because when applied to the payment of other debts, he would to that extent be discharged from those obligations. But there was no reservation of a benefit to the debtor himself, nor are we at all able to see that if Hummel had accepted the letter and agreed to carry it out, and apply the surplus to the payment of specified debts, it would be for the benefit or use of the grantor within the terms and conditions of the statute. A bill may be filed to declare a deed a mortgage and to foreclose it and the purpose of the conveyance may be established by parol testimony. *McClure v. Smith*, 14 Colo. 297.

We are well aware of the rule that where the expressed consideration is largely more than the debt and the conveyance is claimed to be a mortgage, courts will view the trans-

action with suspicion, and the evidence of good faith and absence of fraudulent intent as against contesting creditors must be full and satisfactory. Such transfers are closely scrutinized and unless the proof be ample courts will not uphold them. In this state these conveyances are not constructively fraudulent. This precise question has been decided. *Ross v. Duggan et al.*, 5 Colo. 85; *McClure v. Smith, supra.*

The evidence did not establish any fraudulent intent on the part of the grantee. *Seeleman v. Hoagland,* 19 Colo. 231.

There was no proof of fraudulent purpose on the part of the grantor or of the grantee. We have not only followed these decisions by which we are bound, but have also expressed our concurrence. *Wilson v. The American Nat. Bank,* 7 Colo. App. 194.

The case of *Innis v. Carpenter,* 4 Colo. App. 30, is not at all in conflict with this decision. That was a totally different case and required the application of a radically different rule. The transaction was condemned and properly so, but the opinion furnishes no sort of support for the appellant's position.

Several minor errors have been discussed, but none of sufficient consequence to affect the result when the main proposition is resolved against the appellant. It was not error to permit Hummel to testify about the agreement. The letter was not the only evidence of it, and in fact, was not real evidence of it at all. The contract was made prior to the time the letter was written and it was only sent to protect the parties in case of the death of either, and to show what the actual agreement was, to wit: that the conveyance should be made to secure Hummel for his debt.

It is equally true that it was not error to permit Hummel to prove the payment of taxes. If the conveyance was by way of mortgage, it was both against the grantor and the subsequent attaching creditor, entirely right for Hummel to pay them in order to protect his security and when he came to foreclose, the amount which he had paid was properly added to the amount of his original debt.

Proof of the insolvency of Hodges was possibly permissible and perhaps the testimony offered should have been received, but its rejection does not constitute error which will reverse the case. Whether insolvency can be established in this manner we do not determine, but the financial situation of Hodges was clearly established by the testimony and its existence or nonexistence in no manner tended to impeach the *bona fides* of the transaction between Hodges and Hummel.

We do not believe the court erred in refusing to permit proof of Hodges's declarations respecting his purpose made after the conveyances. Even if we should concede that Hodges did state that he made them in order to prevent creditors from attaching him and incumbering his property, it would not avail unless there was proof to show that Hummel had knowledge of the fraudulent intent, or knowledge of something which, if he had pursued the proper inquiries, would have enabled him to ascertain the true situation. We think it clearly established by the testimony not only that Hummel had no fraudulent purpose, but that Hodges acted in good faith, and if he had made the statements charged they would not overcome the positive testimony nor the presumptions which the evidence warrants. It was clearly established that Hummel had no knowledge of any fraudulent purpose. Consequently, there was nothing in which he could participate, and being without that knowledge any intent which Hodges might have had would not affect the validity of his security. *Seeleman v. Hoagland, supra.*

This disposes of all the principal matters urged on our attention, and we are unable to discover any error in the record. The judgment was right and will be affirmed.

*Affirmed.*